A. Andy TORRES; Richard X. Sutton; Tauheed Lloyd; Darius Flewellen; Vinnie Dougherty; Paul Hickman; Carlos Maysonet; Andre Gay; Cedric Thomas, Petitioners

v.

Jeffery BEARD, Ph.D, as Sec. of Dept. of Corrections; Louis Folino, As Supt. of SCI–Greene; The State wide entity of the PA D.O.C., Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 30, 2010.
Decided June 11, 2010.
Reconsideration Denied July 9, 2010.

A. Andy Torres; Richard X. Sutton; Tauheed Lloyd; Darius Flewellen; Vinnie Dougherty; Paul Hickman; Carlos Maysonet; Andre Gay; Cedric Thomas, Petitioners, pro se.

Debra Sue Rand, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondents.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Presently before this Court for disposition are the preliminary objections filed by Jeffery Beard, Ph.D, as Sec. of Dept. of Corrections; Louis Folino, As Supt. of SCI–Greene; and The Statewide entity of the PA D.O.C. (herein collectively referred to as "Respondents") to the Application for Relief/Petition for Mandamus (Complaint) filed, *pro se,* in this Court's original juris-

diction by A. Andy Torres, Richard X. Sutton, Tauheed Lloyd, Darius Flewellen, Vinnie Dougherty, Paul Hickman, Carlos Maysonet, Andre Gay, and Cedric Thomas (hereinafter collectively referred to as "Petitioners").[1] We sustain in part and overrule in part the Preliminary Objections, deny Petitioners' Motion for Class Certification, and dismiss the Complaint with prejudice.

On or about November 23, 2009, Petitioners filed their Complaint against Respondents seeking both declaratory and injunctive relief based on the allegations that: (1) there is a systematic abuse of the Department of Corrections' Policy Number DC–ADM 802, Administrative Custody Procedures,[2] and that there exists a common scheme, plan, motive or design of simply labeling an inmate "a danger to himself or others" without some evidence as directed by DC–ADM 802; (2) there is a systematic abuse of 37 Pa.Code § 93.11(b) and that a common scheme, plan, motive or design of simply providing rote and perfunctory periodic reviews of administrative custody status exists; (3) there is a systematic abuse of the appeal process and that a common scheme, plan, motive or design of all appeal responses stating the exact same rote review of administrative custody status exists; and (4) a common scheme, plan, motive or design of punishing inmates on non-punitive administrative custody status in the restrictive housing unit[3] (RHU) exists. Petitioners request that this Court issue a

declaration that the process being provided for administrative custody status review falls painfully short of the due process afforded via 37 Pa.Code § 93.11(b), and is directly contrary to the specifically forbidden deprivations found by the Third Circuit in *Sourbeer v. Robinson,* 791 F.2d 1094 (3d Cir.1986), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 779 (1987).

Petitioners further request that this Court issue an order setting forth specific procedures that Petitioners aver will afford them the due process that is currently being denied to inmates in administrative custody status and ordering Respondents to cease and desist the punishment of all administrative custody status inmates in the RHU that are not on punishment status in accordance with 37 Pa.Code § 93.11(b).[4] Finally, Petitioners request class certification.

Along with the Complaint, Petitioners filed a Brief and Memorandum of Law in Support of Petitioner Plaintiffs Writ of Mandamus, to which Petitioners have attached several exhibits. On December 10, 2009, Respondents filed an Answer to Petitioners' Motion for Class Certification to which Petitioners filed a response.

On December 28, 2009, Petitioners filed a Motion to Preserve Evidence and Respondents filed a reply to the motion. By order of February 8, 2010, this Court granted Petitioners' motion and directed Respondents to preserve the Level 5 hous-

---

1. By order of November 30, 2009, this Court ordered that Petitioners' Complaint shall be treated as a petition for review addressed to this Court's original jurisdiction. *See* 42 Pa. C.S. § 761; Pa.R.A.P. 1502.

2. Administrative custody is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided for in general population. Section 3 A.1 of DC–ADM 802 (AC Housing Status).

3. DC–ADM 802 defines restricted housing unit "[a]n area or group of cells for an inmate assigned to [disciplinary custody] or [administrative custody]."

4. On December 28, 2009, Petitioners filed a Motion for Temporary Restraining Order and a Memorandum of Law in support thereof. By order of February 8, 2010, this Court denied Petitioners' motion.

ing security logbook evidence from November 2007 and surveillance video footage recorded on housing units G, H, and I from the last 90 days and ongoing pending disposition of this matter.

On February 18, 2010, Respondents filed a Motion to Amend this Court's February 8, 2010, order pertaining to the preservation of evidence. Petitioners objected to the request for amendment; however, by order of March 29, 2010, we amended our February 8, 2010, order to reflect that Respondents are directed to preserve the Level 5 housing security logbook evidence from November 2007 and, if requested, provide to the Court the counselors' Inmate Cumulative Assessment Records (ICAR) notes and Program Review Committee (PRC) reports for the last two years.

Respondents filed Preliminary Objections to the Complaint on December 30, 2009. Therein, Respondents aver that: (1) the claims raised by Petitioners Lloyd, Dougherty, Hickman, Thomas, and Gay in this action are barred by the two-year statute of limitations; (2) Petitioners have failed to state a claim with respect to the due process allegations; (3) Petitioners have failed to state a claim with respect to any claim of retaliation; and (4) Petitioners are not entitled to injunctive relief because they have failed to plead facts demonstrating a clear right to relief. In the brief in support of the Preliminary Objections, Respondents set forth the additional argument that since Petitioners Torres and Maysonet have been moved out of the RHU, their claims are now moot.

■ In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reason-ably deduced therefrom. *Meier v. Maleski,* 167 Pa.Cmwlth. 458, 648 A.2d 595 (1994). The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

■ A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. *Clark v. Beard,* 918 A.2d 155 (Pa.Cmwlth. 2007). It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. *Id.* When ruling on a demurrer, a court must confine its analysis to the complaint. *Id.*

■ In light of the foregoing, this Court first rejects Respondents' argument raised in their brief that the claims raised by Torres and Maysonet are moot because they have been moved out of the RHU. This argument was not raised as an objection in Respondents' Preliminary Objections[5] and the fact asserted by Respondents is outside the averments of the Complaint. Therefore, this Court may not accept Respondents' assertion that Torres and Maysonet have been moved out of the RHU as fact at this stage of the pleadings.

■ Next, Respondents contend that Petitioners Lloyd, Dougherty, Hickman, Thomas and Gay are barred from bringing this action by the applicable two-year statute of limitations. Respondents classify Petitioners' Complaint as a Section 1983[6] action and argue that claims under Section

---

5. *See* Pa.R.C.P. No. 1028(b) ("All preliminary objections shall be raised at one time.").

6. 42 U.S.C. § 1983.

1983 most resemble personal injury actions; therefore, under Pennsylvania law, the aforementioned Petitioners are barred by the two-year statute of limitations that applies to personal injury actions. *See* Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524. Respondents contend that these Petitioners allege that they have been in the RHU since August 22, 2006, December 10, 1996, November 4, 1999, March 27, 2007 and June 26, 1998, respectively, and that they certainly knew that they had been in administrative custody in the RHU for more than two years before filing suit. As such, their claims are barred.

In response, Petitioners argue that the instant action is not a Section 1983 action or a personal injury action and that no federal statute or the United States Constitution has been cited or relied upon as support for their allegations. Petitioners contend that this is purely a mandamus action seeking to compel the specific non-discretionary performance of public officials and that mandating compliance of a state statute in state court has nothing to do with federal authorities. Petitioners contend that there is no authority for the legal conclusion that a mandamus action must be brought within the time constraints of Section 5524 of the Judicial Code.

Petitioners argue further that even if the two-year statute of limitations was applicable, their action falls under the continuous injury/continuing wrong doctrine and that statute of limitations tolling does not begin until the injury/wrong ends. In addition, Petitioners argue that even if legal statutory standing did not extend to when the relevant Petitioners were first placed in administrative custody, they do have legal statutory standing from November 2007 to November 2009, when this action was filed since there are at least four of the complained of reviews per year. Petitioners contend that the placement itself in administrative custody is not an issue; the issue is the process that is due after said placement(s) and guaranteed via 37 Pa. Code § 93.11(b).

Upon review, we conclude that since Petitioners characterize their Complaint as purely a mandamus action, they are not challenging the placement itself into administrative custody, they are not requesting placement in the general population, or seeking damages for any injury to person or property, the claims raised therein by Petitioners Lloyd, Dougherty, Hickman, Thomas and Gay are not barred by the two-year statute of limitations found in Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524. *See The Pennsylvania Land Title Association v. East Stroudsburg Area School District,* 913 A.2d 961 (Pa. Cmwlth.2006), *petition for allowance of appeal denied,* 593 Pa. 743, 929 A.2d 1163 (2007) (Action brought in mandamus not barred by six month statute of limitations where petitioners alleged that respondents failed to comply with statute and petitioners did not seek damages for any injury to person or property but requested that court order respondents to comply with statute). Moreover, as correctly pointed out by Petitioners, even if the two year statute of limitations applied, the claims for the time period from November 2007 to November 2009 are not barred. Accordingly, we overrule Respondents' preliminary objection based on the two year statute of limitations.

Next, Respondents argue that DC–ADM 802 provides for legally sufficient due process in its program review procedures. Respondents point out that 37 Pa. Code § 93.11 mandates due process and that Section 2 A.5–8 of DC–ADM 802 provides detailed due process procedures. Relying on the Third Circuit's decisions in

*Shoats v. Horn,* 213 F.3d 140 (3d Cir. 2000), and *Bowen v. Ryan,* 248 Fed.Appx. 302 (3d Cir.2007), Respondents contend that Petitioners' claim that the due process procedures set forth in DC–ADM 802 are perfunctory and rote are without merit. Respondents contend further that Petitioners' claims are nothing more than an attempt to challenge custodial level and it is well settled that an inmate has no right to be housed at any particular custodial level.

In response, Petitioners contend that just because DC–ADM 802 is in place does not mean that said due process protections are actually being provided to inmates housed in the RHU. Petitioners argue that the exhibits attached to their memorandum of law filed simultaneously with the Complaint fully support their allegations that the alleged protections are rote, perfunctory and truly not provided at all.

■ Petitioners contend further that they are not challenging their initial placements in administrative custody nor are they requesting as relief that they be released to the general population. As such, *Shoats* is completely distinguishable from this action. Petitioners contend that video evidence will show that the required assessments or reviews are not being performed by Respondents in accordance with DC–ADM 802. Petitioners argue that the Third Circuit's decision in *Bowen* is also distinguishable as in that case the plaintiff only presented conclusory allegations that the review procedures were perfunctory and rote. In this case, Petitioners have made sufficient allegations in the Complaint, provided 30 plus exhibits and requested video evidence and logbooks to support their claim. Petitioners argue that the Third Circuit's decision in *Sourbeer* controls this action.

■ Mandamus is an extraordinary writ. *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), cert. denied, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981). It will only be granted to compel performance of a ministerial duty where the plaintiff establishes a clear legal right to relief and a corresponding duty to act by the defendant. *Waters v. Department of Corrections,* 97 Pa. Cmwlth. 283, 509 A.2d 430 (1986). Mandamus is not proper to establish legal rights, but is only appropriately used to enforce those rights which have already been established. *Id.* "Thus, in an action involving an administrative agency's exercise of discretion, the court may only direct the agency to perform the discretionary act and may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken." *McGill v. Department of Health, Office of Drug & Alcohol Programs,* 758 A.2d 268, 270 (Pa.Cmwlth. 2000).

■ The Department of Corrections is authorized to make rules concerning the management of state correctional institutions. *Small v. Horn,* 554 Pa. 600, 722 A.2d 664 (1998). The Department has exercised this authority by promulgating regulations at 37 Pa.Code § 93.11. Section 93.11 governs housing of inmates and provides as follows:

(a) An inmate does not have a right to be housed in a particular facility or in a particular area within a facility.

(b) Confinement in a restricted housing unit (RHU), other than under procedures established for inmate discipline, will not be done for punitive purposes. The Department will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process in accordance and with established principles of law for an inmate who is housed in the RHU. In-

mates confined in the RHU will be reviewed periodically by facility staff.

37 Pa.Code § 93.11. In accordance with 37 Pa.Code § 93.11, DC–ADM 802 governs Administrative Custody Procedures and is applicable to all facilities operated under the jurisdiction of the Department of Corrections. A general population inmate may be assigned administrative custody status and placed in a Security Level 5 housing unit by order of the Shift Commander for several reasons. Section 1 A.1 of DC–ADM 802 (Placement in Administrative Custody Status). Once an inmate is placed in administrative custody, there are two sets of procedures in place governing such custody. The first set of procedures governs an inmate's initial placement into administrative custody. The second set of procedures governs periodic reviews of an inmate's continued confinement in administrative custody.

The procedures governing an inmate's initial placement into administrative custody set forth in DC–ADM 802 are as follows. Whenever practical, written notice of the reasons for administrative custody is given to the inmate prior to placement, but in all cases within 24 hours after placement. Section 1 A.4 of DC–ADM 802. The written notice shall be prepared on form DC–141, Part 1 by indicating "Other." Section 1 A.1 of DC–ADM 802.

An administrative hearing shall be conducted by the Program Review Committee[7] (PRC) and the reason(s) for the inmate's administrative custody must be explained to the inmate. Section 2 A. 1 & 2 (Administrative Hearings). The rationale for the administrative custody placement shall be read and explained to the inmate. Section 2 A.5 of DC–ADM 802. The inmate shall be permitted to respond to the rationale for administrative custody placement and may tell his/her version orally or submit it in writing. Section 2 A.6 of DC–ADM 802. A PRC member shall write a summary of any relevant oral statement by the inmate. *Id.*

The PRC's decision shall be based on some evidence as to whether there is a valid security reason to confine the inmate in administrative custody as defined in Section 1 A.2 of DC–ADM 802. Section 2 A.7 of DC–ADM 802. The evidence may include counselor's reports, Psychiatric/Psychological information, staff recommendations, and/or investigative reports. *Id.*

A written summary of the hearing shall be prepared on the DC–141, Part 3. Section 2 A.8 of DC–ADM 802. It shall include the reason(s) relied upon by the PRC to reach its decision. *Id.* A copy of the written summary shall be given to the inmate. *Id.* The inmate may submit a

---

7. DC–ADM 802 defines Program Review Committee as follows:

A committee consisting of three staff members who conduct Administrative and Disciplinary Custody Hearings, periodic reviews, make decisions regarding continued confinement in a Security Level 5 Housing Unit, and hear all first level appeals of misconducts. The committee shall consist of a Deputy Superintendent (who shall serve as the chairperson), a Commissioned Officer, and one staff member from the following classifications[:] Corrections Classification and Program Manager (CCPM),

Unit Manager, School Principal, Alcohol and Other Drugs Treatment Specialist Supervisor or Inmate Records Office Supervisor. The Facility Manager may designate other staff as committee members; however, if such designations are made, they must be in writing and the Facility Manager must maintain a list of all designees. Whenever a PRC is convened, at least one member of the committee must be a staff member who is not directly involved in the administration of the Security Level 5 Housing Unit in which the inmate is currently housed.

concise summary of the hearing, which shall be made a permanent part of the file. *Id.* If the inmate becomes disruptive in the hearing or refuses to follow instructions, he/she shall be removed and the hearing conducted without the inmate being present. Section 2 A.9 of DC–ADM 802.

An inmate may appeal, in writing, the PRC's decision concerning his/her initial confinement in administrative custody to the Facility Manager/designee[8] within two days of the completion of the hearing. Section 2 C.1 of DC–ADM 802. The decision of the Facility Manager/designee will be forwarded to the inmate within ten days of the receipt of the appeal. *Id.* An inmate may appeal the initial decision of the Facility Manager/designee to continue him/her in administrative custody confinement to the Office of the Chief Hearing Examiner. Section 2 C.2 of DC–ADM 802. The Office of Chief Hearing Examiner will review the record of the hearing and all other relevant documents and rule on the appeal within two workdays after its receipt. Section 2 C.3 of DC–ADM 802. In every case where the action of the PRC or the Facility Manager/designee is reversed, the Office of Chief Hearing Examiner shall prepare a letter to the inmate and a memorandum to the Facility Manager/designee. Section 2 C.4 of DC–ADM 802. These will be forwarded to the appropriate Regional Deputy Secretary for review and signature. *Id.*

The procedures governing an inmate's continued confinement in administrative custody are set forth in Section 2 D. of DC–ADM 802 (Periodic Reviews) are as follows. The PRC shall review the status of each inmate in administrative custody status every seven days for the first two months. Section 2 D.1 of DC–ADM 802. Each inmate in administrative custody status shall be seen weekly by his/her counselor. Section 2 D.2 of DC–ADM 802. The Unit Management Team[9] shall review the status of every inmate in administrative custody after 30 days and every 30 days thereafter. Section 2 D.3 of DC–ADM 802. The counselor's weekly interviews and the Unit Management Team's monthly reviews are documented in the DC–14, Cumulative Adjustment Record. Section 2 D.4 of DC–ADM 802. The PRC will interview every inmate in administrative custody status every 90 days unless the Unit Management Team recommends an earlier review. Section 2 D.5 of DC–ADM 802. The PRC's decision to continue the inmate in administrative custody status or release him/her to population is documented on DC–141, Part 4, with a copy provided to the inmate. *Id.*

If the PRC decides to continue the inmate in administrative custody following the 90–day review, the inmate may appeal his/her continuation. Section 2 C.5 of DC–ADM 802. Such appeals are governed by Section 2 C., Appeals, of DC–ADM 802. The inmate's right to appeal terminates when he/she is released from administrative custody. Section 2 C.6 of DC–ADM 802.

A qualified psychologist or psychiatrist shall personally interview and conduct an assessment of any inmate remaining in

---

**8.** DC–ADM 802 defines Facility Manager as follows:

> The Superintendent of a State Correctional Facility, State Regional Correctional Facility, Commander of a Motivational Boot Camp, Regional Director of a Community Corrections Center, and/or the Director of the Training Academy.

**9.** DC–ADM 802 defined Unit Management Team as follows:

> The individuals assigned to operate a housing unit with the responsibilities for security, risk management, conducting informal resolutions of misconducts, and program delivery.

administrative custody status for more than 30 calendar days. Section 2 D.7 of DC–ADM 802. If the inmate's confinement continues for an extended period, a mental health assessment will be completed at least every 90 calendar days. *Id.*

Although Petitioners state that they are not challenging their initial placements in administrative custody, we note that "it is entirely a matter of the Department [of Correction's] discretion where to house an inmate. Under the Department's regulation, an 'inmate does not have a right to be housed in a particular facility or a particular area within a facility.'" *Clark*, 918 at 160 (Pa.Cmwlth.2007) (quoting 37 Pa.Code § 93.11). In determining whether an inmate has:

> asserted a protected liberty interest, we begin by noting that matters of prison management are uniquely the province of the executive and legislative branches of government.... The courts of this Commonwealth and the federal courts have consistently held that prison officials have the authority to determine where a prisoner should be housed and that principles of due process impose few restrictions on the use of that authority.

*Id.* at 161 (citations omitted). Further, state statutes and regulations create only limited liberty interests for inmates regarding the degree of confinement in which they are held:

> ... States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hard-

ship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citations omitted).

In *Shoats*, a Pennsylvania inmate challenged his continued confinement in solitary confinement on the basis that such administrative custody violated his right to procedural due process. The inmate sought immediate release into the general prison population, damages, and other relief. The Third Circuit held that the inmate who was continuously held by the Department in administrative custody for seven years had a liberty interest in being released from administrative custody, but that the Department of Corrections' procedures, which were very similar to the current procedures set forth in DC–ADM 802, for keeping the inmate in administrative custody comported with the requirements of due process. *Shoats*, 213 F.3d at 144.

In *Bowen*, the Third Circuit also rejected claims that an inmate was placed on the restricted release list without due process. The Third Circuit rejected Bowen's conclusory allegations that the periodic reviews by the PRC were rote and meaningless and held that the procedures provided by the Department of Corrections satisfied the minimal constitutional standards for due process. *Bowen*, 248 Fed.Appx. at 304–05.

In *Sourbeer*, fifteen year old Sourbeer was transferred to a Pennsylvania correctional institution after being convicted of, but not sentenced for, murdering his mother. The county authorities requested Sourbeer's transfer because they believed he was a security risk given his age and the nature of the offense and because they believed the state correctional institution could provide proper supervision. Upon Sourbeer's arrival at the state correctional institution, he was classified as an HVA

("Hold for Various Authorities") prisoner because of his unsentenced status. Sourbeer was housed in the RHU in administrative custody status from October 13, 1976, until October 27, 1977. During his confinement in administrative custody, Sourbeer never received a complete psychological or psychiatric examination, nor was he ever charged with any misconduct.

Certain regulations, which were set forth in an administrative directive, were in place during the period of Sourbeer's confinement that established procedures and substantive standards governing the use of restricted housing in state correctional institutions. Those procedures and standards were similar to the current procedures and standards set forth in DC–ADM 802. In addition, the Department of Corrections issued administrative memoranda establishing policies for HVA prisoners. The latest memorandum governing HVA cases stated that such inmates should be initially placed in administrative custody, pending a hearing to be held in accordance with the Department's administrative directive.

The District Court found that Sourbeer's due process rights were not violated by his initial confinement in administrative custody through April 7, 1977. The District Court did hold, however, that Sourbeer's due process rights were violated by his confinement during the period from April 13, 1977, until his release from administrative custody on October 27, 1977, because "over time reasons which would have justified Sourbeer's early detention in administrative custody were applied in a rote fashion on later reviews when experience should have led officials to let Sourbeer into the general population." *Sourbeer*, 791 F.2d at 1100. The District Court determined that Sourbeer's segregated position seemed to have resulted simply from his HVA status. *Id.* at 1102.

The Third Circuit upheld the District Court's finding that Sourbeer was not afforded meaningful due process. *Id.* at 1101–02. The Third Circuit determined that although the prison procedures were adequate and they were followed by officials, the reviews were perfunctory and thus denied Sourbeer a meaningful opportunity to be heard. *Id.* The Third Circuit held that the District Court's finding that the reviews were applied in a rote fashion was not clearly erroneous because there was support for this finding, in that half of Sourbeer's reviews noted his "hold" status as the reason for segregation and he was never given any psychological evaluation. *Id.* The Third Circuit noted that the PRC reports fairly consistently misstated Sourbeer's status as awaiting trial for murder, when he in fact was convicted but unsentenced. *Id.* The Third Circuit determined that this careless repeated error was additional support for the District Court's finding that Sourbeer was not afforded meaningful process. *Id.*

With the foregoing in mind, we now turn to the question of whether Petitioners' Complaint and the exhibits incorporated therein, state a claim upon which relief may be granted. As Petitioners are not challenging their initial placements in administrative custody, we shall review the allegations of the Complaint to determine whether the Complaint sufficiently states a claim that Respondents are conducting the periodic reviews of each Petitioner's administrative custody in a rote and perfunctory manner. The allegations of the Complaint admit with respect to all of the Petitioners that each one of them is being interviewed by the PRC every 90 days as directed by Section 2 D.5 DC–ADM 802 and that after each 90 day PRC review, each one of them is receiving a form or report setting forth the PRC's decision to continue the administrative custody status

of each Petitioner, as required by DC–ADM 802.

The allegations further reveal that Petitioners believe the explanations provided on the report/form for their continued confinement in administrative custody is ambiguous and given without any input from each inmate. The allegations show that Petitioners believe they are entitled to a detailed explanation of the rationale as to why they are being continually held in administrative custody, that Petitioners believe without such detailed explanation or rationale, each Petitioner must guess as to the basis for an appeal, and that Petitioners believe such detailed explanation or rationale would enable them to more effectively appeal the PRC's decision to continue their administrative custody status for another 90 days. Some of the Petitioners allege that they tried to offer an explanation at each PRC review as to why they should no longer be held in administrative custody, but their explanations were either ignored or summarily dismissed. One Petitioner alleges that all appeals from the PRC's decisions to continue the inmates in administrative custody status are dismissed using the same form letter with no detailed explanation as to why the appeals are being denied. The allegations of the Complaint further reveal that Petitioners believe that there is a systematic abuse of the review and appeal process resulting in the rote and perfunctory periodic reviews.

As support for the foregoing allegations, Petitioners have provided copies of form DC–141. This form or PRC report was provided to each Petitioner after a particular 90 day PRC review. A review of these documents reveals that in each instance, the PRC did give each Petitioner an unambiguous reason for confinement that purports with the reasons set forth in Section 1 A.1 of DC–ADM 802. While there is no detailed explanation or rationale as to why

the PRC decided to continue to confine a Petitioner in administrative custody, the reason for confinement as set forth on form DC–141 is clear and straightforward. Therefore, Petitioners' allegation that they must guess as to the reason for appeal purposes is not supported by the exhibits incorporated into the Complaint. Moreover, a review of several of the forms provided to Petitioners by the PRC after each 90 day review, reveals that in some instances, the PRC granted certain requests or privileges to a Petitioner such as granting extended commissary privileges, granting general labor pool compensation, and granting a request for a radio. The grant of such requests and notations on a few of the forms indicates that some of the Petitioners did provide input during their interview with the PRC.

We also note that while Petitioners allege that they received a form or PRC report after every 90 day review, they have not provided a copy of the form or PRC report provided for each PRC 90 day review they have received while in administrative custody nor do they set forth detailed allegations with respect to each and every review. For example, in some instances, the Complaint merely alleges that the Petitioner has been provided several PRC reviews during his confinement in administrative custody without specifically alleging how each review was performed in a rote and perfunctory manner. Moreover, except for one instance, Petitioners do not allege that they actually appealed every PRC decision to continue their confinement in administrative custody or that they were denied the right to appeal any PRC decision.

More importantly, what is missing from the allegations of Petitioners' Complaint is any averment that Respondents are not complying with or are performing in a rote and perfunctory manner, the other man-

dated requirements of a periodic review as set forth in Section 2 D. of DC–ADM 802. It is clear from a review of all the requirements for a periodic review provided in Section 2 D., as set forth previously in this opinion, that a PRC 90 day periodic review does not occur in a vacuum. A reading of all of the provisions governing periodic reviews reveals that the periodic reviews provided to an inmate consists of more than just an interview before the PRC every 90 days.

There are other requirements regarding a periodic review that must be complied with between each 90 day PRC review that Petitioners do not challenge in the allegations of the Complaint. For example, Petitioners do not allege: (1) that they are not seen weekly by his/her counselor; (2) that the Unit Management Team does not review each Petitioner's status in administrative custody every 30 days (3) that the counselor's weekly interviews and the Unit Management Team's monthly reviews are not documented in the DC–14, Cumulative Adjustment Record; (4) that the PRC does not consider the DC–14, Cumulative Adjustment Record when reviewing a Petitioner's administrative custody status every 90 days; (5) that a qualified psychologist or psychiatrist has not personally interviewed and conducted an assessment of each Petitioner remaining in administrative custody for more than 30 calendar days; and, (6) that if a Petitioner's confinement has continued for an extended period, that a mental health assessment has not been completed at least every 90 calendar days. Without any allegations that Respondents failed to comply with every step of the required review process, Petitioners' allegations that they are being subject to a rote and perfunctory periodic review of their administrative custody status every 90 days by the PRC fail to support their claim that Respondents are not complying with DC–ADM 802.

Therefore, Petitioners' reliance on the Third Circuit's decision in *Sourbeer* is misplaced. In *Sourbeer,* the inmate clearly was not afforded all the protections due under the Department of Corrections' administrative directive; specifically, Sourbeer was not given the required psychological reviews and the PRC reports misstated Sourbeer's status as awaiting trial for murder, when he in fact was convicted but unsentenced.

The courts have determined on more than one occasion that the Department of Corrections' procedures, which were very similar to the current procedures set forth in DC–ADM 802, for keeping the inmate in administrative custody comported with the requirements of due process or satisfied the minimal constitutional standards for due process. *Shoats, Bowen.* Accordingly, Petitioners have failed to establish a clear right to relief. As stated previously in this opinion, this Court may not direct an agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken. *McGill.* Therefore, this Court cannot order Respondents to provide Petitioners with the injunctive relief requested by Petitioners in the Complaint.[10]

10. A review of the relief requested in the Complaint reveals that Petitioners believe they are entitled to a procedure more akin to an administrative hearing in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704, every 90 days rather than a periodic review as governed by DC–ADM 802. Specifically, the Complaint requests this Court order that Petitioners be given at least 48 hours prior to any PRC "hearing": (1) a blank Inmate Version Form to record their version of the hearing; and (2) a blank Inmate Witness Form to permit Petitioners the opportunity to call witnesses to rebut the PRC's position. Petitioners further request that all PRC reviews/administrative

Respondents' Preliminary Objections are sustained in part and overruled in part in accordance with this opinion.[11] Petitioners' Motion for Class Certification is denied and the Complaint is dismissed with prejudice.

## ORDER

AND NOW, this 11th day of June, 2010, it is hereby ordered that:

1. Respondents' Preliminary Objections to the Application for Relief/Petition for Mandamus are sustained in part and overruled in part in accordance with the foregoing opinion;

2. Petitioners' Motion for Class Certification is denied; and

3. Petitioners' Application for Relief/Petition for Mandamus is dismissed with prejudice.

hearings be electronically recorded in accordance with the Administrative Agency Law and that the PRC explicitly and specifically write out the rationale, findings, conclusions and supporting facts for continued administrative custody which will, in turn, give Petitioners an actual basis upon which to appeal and not force them to guess as to the reason.

However, the only relief that Petitioners may obtain through mandamus is that the proper procedures be followed and the proper law be applied by Respondents when conducting a periodic review of an inmate's continued confinement in administrative custody. Moreover, the Administrative Agency Law only applies to adjudications by a Commonwealth Agency. *See* Section 501 of the Administrative Agency Law, 2 Pa.C.S. § 501. The function of the PRC is to conduct an internal review of whether an inmate's con-

finement in administrative custody should continue and to issue a report advising the inmate of the PRC's decision. Petitioners do not set forth any allegations that the PRC itself is a Commonwealth Agency whose function is to render final appealable orders.

11. As stated previously herein, Respondents contend that Petitioners have failed to state a claim with respect to any claim of retaliation. However, in this Court's order of February 8, 2010, denying Petitioners' Motion for Temporary Restraining Order, we point out that Petitioners' Complaint includes no claim of retaliation and Petitioners state in their brief in opposition to the Preliminary Objections that they have not made any retaliation claim in their request for mandamus relief. As such, we will not address Respondents' argument on this issue.