# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamont C. Bullock, : 
                 Petitioner : 
                 : 
       v. : 
                 : 
The Pennsylvania Department : 
of Corrections, : No. 241 M.D. 2016 
                 Respondent : Submitted: December 30, 2016

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: May 12, 2017

The Pennsylvania Department of Corrections (Department) filed preliminary objections in the nature of a demurrer to Lamont C. Bullock's (Bullock) pro se Amended Petition for Review (Petition) in the Nature of a Complaint in Mandamus filed in this Court's original jurisdiction.[1] The sole issue before the Court is whether Bullock's Petition states claims upon which relief may be granted. After review, the Department's preliminary objections are sustained and Bullock's Petition is dismissed.

Bullock is incarcerated at the State Correctional Institution at Greene (SCI-Greene). On July 15, 2016, Bullock filed the Petition. According to the Petition and the documents attached thereto, Bullock's due process and equal

---

[1] Originally, the Department's preliminary objections also sought to dismiss Bullock's Petition under Pennsylvania Rule of Appellate Procedure 1514(c) for lack of personal jurisdiction/improper service. On August 23, 2016, this Court ordered Bullock to make proper service. By September 26, 2016 order, this Court overruled that preliminary objection based upon Bullock's compliance with its August 23, 2016 order. Accordingly, only the Department's demurrer remains at issue.

protection rights were violated when Department employees confiscated, stole, lost, destroyed and/or misplaced his Department-approved legal, religious and personal property, and that the Department's actions or inactions "were planned and calculated in retaliation for [Bullock] filing grievance complaint[s] and civil actions."[2] Petition ¶ 6; *see also* Petition ¶¶ 4-5.

Specifically, Bullock claimed that during a January 14, 2014 search of his cell, Correctional Officer (CO) Myers[3] and another unidentified CO confiscated Bullock's Sony Walkman, two pairs of prescription eyeglasses and a deck of cards without giving him a confiscated items receipt. *See* Petition ¶¶ 9-13. Bullock represented that after CO Myers refused to provide a receipt, and Bullock contacted security and block officers concerning the same, he filed Grievance No. 496184 which was ultimately denied.[4] *See* Petition ¶¶ 14-19; *see also* Petition Exs. 1A-C. Bullock stated that his property was never returned. *See* Petition ¶ 20.

Bullock further alleged in the Petition that he was taken into administrative custody at SCI-Fayette and removed from general population to the Restricted Housing Unit (RHU)[5] on August 22, 2014, without the opportunity to pack

---

[2] On April 18, 2002, in *Bullock v. Horn* (C.A. No. 01-2428), the United States Court of Appeals for the Third Circuit declared Bullock a three-strike litigant. *See* attachment to Department's Motion to Deny Bullock's Application for Leave to Proceed *in Forma Pauperis* (Motion). The Department's Motion was rendered moot after Bullock paid this Court's filing fee. *See* June 24, 2016 Order.

[3] CO Myers' full name is not stated in the record.

[4] Grievance No. 496184 was denied because Bullock failed to document his ownership of the missing items. Despite being afforded the opportunity to resubmit the grievance with the proper documentation, Bullock did not do so. *See* Petition Ex. 1B.

[5] "DC–ADM 802 defines restricted housing unit [as] '[a]n area or group of cells for an inmate assigned to [disciplinary custody] or [administrative custody].'" *Torres v. Beard*, 997 A.2d 1242, 1244 n.3. (Pa. Cmwlth. 2010). "Administrative custody is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided for in general population. Section 3 A.1 of DC-ADM 802 (AC Housing Status)." *Id.* at 1244 n.2.

According to the record, Bullock was placed in administrative custody and placed in RHU because he had "been charged with or is under investigation for a violation of facility rules and

and/or inventory his belongings. *See* Petition ¶¶ 21-23. Bullock asserted the following about when the COs permitted him to inventory his property on August 25, 2014: his property was mixed with another inmate's property to make it appear that he was over his cell content limit; his property was strewn about after being inventoried outside of his presence; he was forced to destroy some of it; and his Department-approved religious and legal books, commissary food and clothing and other personal items were missing. *See* Petition ¶¶ 23-29, 31-32. He was given three confiscated item receipts. *See* Petition ¶¶ 30-31; *see also* Petition Exs. 1C, D, E. After Bullock attempted to account for his missing items, he filed Grievance No. 526278 which was ultimately denied.[6] *See* Petition ¶¶ 33-42; *see also* Petition Exs. 1F, G, H.

Bullock further declared that when he was placed in RHU at SCI-Smithfield on November 14, 2014, his property was again inventoried outside of his presence and more items were confiscated, lost or stolen, including an Aztec television antenna, prescription eyeglasses, ear buds, a headphone extension, a headphone splitter, and a $2 venda card.[7] *See* Petition ¶¶ 45-47.

Bullock represented that when he was transferred to SCI-Greene RHU on December 2, 2014, his property was not inventoried in his presence upon his arrival, it was strewn about, and his television was damaged. *See* Petition ¶¶ 49-59. Accordingly, Bullock refused to sign the inventory sheet and filed Grievance No. 543765, which was sustained as to his television. *See* Petition ¶¶ 59-64; *see also*

___

there is a need for increased control pending disposition of charges or completion of the investigation." Petition Ex. I at 2.

[6] Grievance No. 526278 was denied because investigation revealed that his property was inventoried in his presence and was not intermixed with another inmate's property, that some of the items he claimed were missing never arrived at RHU, and that Bullock had opted to destroy certain items that were over the property limit established by DC-ADM 815. *See* Petition Ex. 1-B. The Department's response was upheld on appeal. *See* Petition Exs. 1-C, 1-C-1.

[7] The record does not define the term "venda card."

Petition Exs. AB, AC, AD. Bullock further claimed that upon his refusal to sign the inventory sheet while being processed for release from RHU, COs Churney, Cody, Workman and Sergeant Pent[8] "fabricated a misconduct report agains[t] [Bullock]" and he was returned to RHU for an additional 30 days. Petition ¶¶ 65-67. Upon re-release from RHU, Bullock "was made to sign the inventory sheet" without the opportunity to check his property for damage. Petition ¶ 68; *see also* Petition ¶ 69. He later discovered that "his television and typwrit[]er had been damaged and broken considerably." Petition ¶ 69. Bullock claimed that he filed a grievance on Februrary 10, 2015 concerning his television and typewriter, but in exchange for having those items replaced, Bullock agreed to "sign off" on the grievance.[9] Petition ¶¶ 70-71. He explained that although he received a typewriter five or six months thereafter, he did not receive a television for at least 19 months because he had to wait until another inmate was released or had his television confiscated. *See* Petition ¶¶ 72-73.

Bullock pronounced that he broke his prescription eyeglasses on March 19, 2016, and reported it to CO Jones, who issued a confiscated item sheet and processed them to be repaired by Mr. Hice.[10] *See* Petition ¶¶ 75-76. However, Mr. Hice claimed he never received them, and they were not returned to Bullock. *See* Petition ¶¶ 74-79. Bullock stated that Mr. Hice "was acting in retaliation for [Bullock] filing grievances against him" for Mr. Hice's alleged use of contaminated needles on Bullock in the past. Petition ¶ 79; *see also* Petition ¶ 78. Bullock filed a

---

[8] The full names of these COs are not stated in the record.

[9] Bullock referenced the grievance as Petition Ex. AE. Although no document with that designation is attached to the Petition, a copy thereof was attached to Bullock's motion to supplement his original petition for review, which was denied by this Court on July 6, 2016, with the instruction that Bullock file the amended petition.

[10] Mr. Hice's complete name is not stated in the record.

grievance regarding the mishandling of his glasses, which was denied.[11] *See* Petition ¶¶ 80-81.

Bullock declared that he filed an Inmate [Cable] Subscriber Agreement which authorized the Department to deduct $17.00 per month from his account beginning on April 1, 2016; however, since Bullock did not receive a cable cord until April 14, 2016, he was unable to watch television from April 1, to April 14, 2016. *See* Petition ¶¶ 89-92; *see also* Petition Exs. A-L, A-M. Bullock filed Grievance No. 622998 seeking reimbursement for the days he could not access cable, but the grievance was denied.[12] *See* Petition ¶¶ 91-92; *see also* Petition Ex. A-K at 3-5.

Bullock requests that this Court:

> 1. Enter a final ORDER directing that [the Department] violated the property rights of [Bullock] in violation of both the Due Process Clause and Equal Protection Clause of the 1st, 8th and 14th[13] Amendments of the United States

---

[11] Bullock referenced the grievance as Petition Ex. AG. Although no document with that designation is attached to the Petition, a copy thereof was attached to Bullock's motion to supplement his original petition for review, which was denied by this Court on July 6, 2016, with the instruction that Bullock file the amended petition.

[12] Grievance No. 622998 was denied because Bullock did not pick up his cable when it was made available to him on May 1, 2016, or report to anyone that he had not received it that day. *See* Petition Ex. A-K at 3-5. It is unclear from this record whether Bullock appealed from that denial.

[13] Section 1 of the Fourteenth Amendment to the United States Constitution provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

Article 1, Section 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. "The Pennsylvania Supreme Court has held that 'the requirements of Article I, Section 1 of the Pennsylvania Constitution are not distinguishable from those of the [Due Process Clause of the] 14th Amendment

Constitution, and the Due Process and [E]qual Protection Clause of the 14th Amendment to the Pennsylvania Constitution, and variou[]s Articles of the Pennsylvania Constitution, when [the Department] mishandled, lost, stole, confiscated and damaged [Bullock's] property.[14]

2. Issue a[n] ORDER directing [the Department] to either return [Bullock's] property forthwith, and replace and/or reimburse [Bullock] for each property item lost, stolen, damaged, or pay [Bullock] in full.

[3.] Issue an ORDER directing that the actions or inactions of [the Department] were in retaliation for [Bullock] filing grievance complaints, and civil actions against prison officials.

4. Issue an ORDER that [the Department] pay interest to [Bullock] for every day [Bullock] was without his property.

5. Grant any further relief the Court deems appropriate, or for punitive reasons.

Petition at 11.

On August 17, 2016, the Department filed the preliminary objections contending that Bullock's Petition fails to state due process and equal protection

---

. . . [;thus,] we may apply the same analysis to both claims.'" *Robbins v. Cumberland Cnty. Children & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Cmwlth. 2002) (quoting *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995)).

Article 1, Section 26 of the Pennsylvania Constitution declares: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26. "Our Supreme Court treats equal protection claims under the Fourteenth Amendment of the United States Constitution the same as equal protection claims brought under Article I, Section 26 . . . of the Pennsylvania Constitution." *Ballerino v. Workers' Comp. Appeal Bd. (Darby Borough)*, 938 A.2d 541, 545 n.5 (Pa. Cmwlth. 2007).

[14] Bullock did not make any specific allegations of First and Eighth Amendment violations or state which other articles of the Pennsylvania Constitution may be at issue, nor did he provide facts in support thereof in his Petition or brief in opposition to the Department's preliminary objections. Because Bullock did not develop arguments related to those issues, they are waived. *Rapid Pallet v. Unemployment Comp. Bd. of Review*, 707 A.2d 636 (Pa. Cmwlth. 1998); *see also* Pa.R.A.P. 106 (Pa.R.A.P. 2119 applies to original jurisdiction petitions for review/complaints); G. Ronald Darlington et al., 20A West's PA Practice, *Pa. Appellate Practice* §§ 106:4, 106:16 (2016-17 ed.). Accordingly, our review herein is limited to Bullock's Fourteenth Amendment violation claims.

violation claims and/or retaliation claims. Bullock filed a response to the Department's preliminary objections. The Department's preliminary objections are now before the Court.[15]

Pennsylvania Rule of Civil Procedure 1019(a) states: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."[16] Pa.R.C.P. No. 1019(a). This Court has declared that "[t]he purpose of this rule is to require the plaintiff to disclose the material facts sufficient to enable the adverse party to prepare the case." *Bennett v. Beard*, 919 A.2d 365, 367 (Pa. Cmwlth. 2007). "Legal conclusions and general allegations of wrongdoing, without the requisite specific factual averments or support, fail to meet the pleading standard." *McCulligan v. Pa. State Police*, 123 A.3d 1136, 1141 (Pa. Cmwlth. 2015), *aff'd,* 135 A.3d 580 (Pa. 2016). Accordingly,

> [i]n ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom.[17] It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed

---

[15] Bullock filed a motion to compel discovery which has been stayed pending disposition of the Department's preliminary objections. *See* July 25, 2016 Order.

[16] Where appellate rules do not otherwise specifically address them, Pennsylvania Rules of Civil Procedure apply to petitions for review filed in this Court's original jurisdiction. *See* Pa.R.A.P. 106.

[17] "[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.,* 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

7

> to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted).

### Due Process Claims

In the Petition, Bullock claims that several of his property items were confiscated and/or damaged, and he was deprived of two weeks of cable service, in violation of his due process rights.[18]

Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "Due process under the Pennsylvania Constitution emanates from a number of provisions, including Article I, Sections 1, 9, and 11." *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). Article 1, Section 1 of the Pennsylvania Constitution, Pa. Const. art. I, § 1, similarly protects life, liberty and property interests.[19] Article I, Section 9 of the Pennsylvania Constitution provides, in pertinent part, that a person shall not be "deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, § 9. Article I, Section 11 of the Pennsylvania Constitution states, in relevant part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]" Pa. Const. art. I, § 11.

---

[18] "Although [Bullock does] not specify whether [he is] claiming that the Department's action[s] violate[] procedural due process guarantees or principles of substantive due process, [his] allegations sound in procedural due process, as does the relief [he] seek[s.]" *Small v. Horn*, 722 A.2d 664, 671 (Pa. 1998).

[19] Article 1, Section 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

"In order to establish that the [Department] violated his Fourteenth Amendment right to due process, [**Bullock**] **must establish that he has been deprived of** life, liberty and **property without due process of law**. *See* U.S. Const. Amend. XIV, § 1." *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999) (emphasis added). However, the United States Supreme Court has ruled that an **inmate cannot state a cognizable procedural due process claim for the deprivation of property** by prison officials **where there exists an adequate post-deprivation remedy**. *Hudson v. Palmer*, 468 U.S. 517 (1984). This Court has declared that the Department's **grievance procedure is a constitutionally-adequate and legal post-deprivation remedy**. *See Silo; see also Brown v. Wetzel* (Pa. Cmwlth. No. 318 M.D. 2015, filed September 9, 2016); *Fennell v. N. D. Goss* (Pa. Cmwlth. No. 1198 C.D. 2015, filed February 5, 2016).[20]

Here, Bullock asserts in the Petition that the Department "failed and/or refused to provide an adequate resolution for the mishandling of his property[.]" Petition ¶ 5. Bullock's grievances were denied because he either did not supply documentation of his valid possession of the subject items, he possessed property in excess of the limits set forth in DC-ADM 815,[21] or investigations of his claims did

---

[20] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[21] Other courts have recognized that reasonable prison regulations regarding the quantity and type of property that inmates may possess do not violate due process guarantees. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 554 . . . (1979) (noting that prisoners' due process rights with respect to possession of property are not absolute, but are 'subject to reasonable limitation *or retraction* in light of the legitimate security concerns of the institution') (emphasis added); *Ford v. Schmidt,* 577 F.2d 408 (7th Cir. 1977) (upholding, against a constitutional challenge, regulations established by prison officials concerning the possession of property by inmates).

*Small*, 722 A.2d at 671.

not produce evidence to support them. Since it is clear that Bullock "fully utilized the [Department's] grievance procedure" to redress each of his property damage/confiscation claims, his "**mere dissatisfaction with the outcome . . . does not equate to a denial of due process**."[22] *Fennell*, slip op. at 4 (emphasis added; quotation marks omitted).

Accepting as true all of the Petition's well-pled allegations and inferences reasonably deduced therefrom, it "appear[s] with certainty that the law will not permit recovery" for Bullock's alleged due process violations. *Torres*, 997 A.2d at 1245. Because it appears on the face of the Petition that Bullock was afforded all of the process that was due him, we sustain the Department's demurrer to Bullock's due process violation claims.

### Equal Protection Claims

Bullock further claims in the Petition that the mishandling and confiscation of his property and cable service violated his constitutional right to equal protection.

Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article 1, Section 26 of the Pennsylvania Constitution declares: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26. "Together, [Article 1, Section 1 and Article 1, Section 26 of the Pennsylvania Constitution] are understood to establish a right to equal protection of the laws equivalent to that established in the United States

_____

[22] Moreover, this Court lacks jurisdiction to relitigate Bullock's grievances. *Portalatin v. Dep't of Corr.*, 979 A.2d 944 (Pa. Cmwlth. 2009).

Constitution."[23] *Smires v. O'Shell*, 126 A.3d 383, 393 n.7 (Pa. Cmwlth. 2015), *as amended* (Oct. 26, 2015). "Our Supreme Court has held that '[t]he Equal Protection Clause . . . does not obligate the government to treat all persons identically, but merely assures that all similarly[-]situated persons are treated alike.'" *Garrison v. Dep't of Corr.*, 16 A.3d 560, 564 (Pa. Cmwlth. 2011) (quoting *Small v. Horn,* 722 A.2d 664, 672 (Pa. 1998)).

"[I]n order to properly state an equal protection claim, [**Bullock**] **must allege that he is receiving different treatment from that received by other similarly-situated individuals** due to his membership in a particular class and his assertions of intentional disparate treatment **must be supported by specific factual allegations**." *Mobley v. Coleman*, 110 A.3d 216, 222 (Pa. Cmwlth. 2015) (emphasis added). Nowhere in his Petition does Bullock state how his equal protection rights were violated. Bullock merely averred that "the [Department] has discriminated against [him] by failing to conduct an investigation on the allegation that his property was given to other inmates, and willfully denied his grievances contrary to policy guaranting [sic] a resolution for meritorious issues . . . ." Petition ¶ 93. Bullock does not make any specific factual allegations in the Petition that he is a member of a particular class,[24] or that he was being treated differently from similarly-situated persons as a result. Under the circumstances, Bullock has not pled any facts in the Petition sufficient to establish that the Department violated his equal protection rights.

---

[23] Accordingly, "[o]ur Supreme Court has held that the equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protections claims under the Fourteenth Amendment to the United States Constitution." *Muscarella*, 87 A.3d at 972 n.8.

[24] Imprisonment in a state correctional facility creates "neither a suspect classification nor a quasi-suspect classification." *Small*, 722 A.2d at 672.

11

Accepting as true all of the Petition's well-pled allegations and inferences reasonably deduced therefrom, it "appear[s] with certainty that the law will not permit recovery" for Bullock's alleged equal protection violations. *Torres*, 997 A.2d at 1245. Accordingly, we sustain the Department's demurrer to Bullock's equal protection violation claims.

## Retaliation Claims

> A prison retaliation claim requires proof that 'the inmate engaged in constitutionally[-]protected conduct, prison officials took adverse action, and the protected conduct was a substantial or motivating factor for the action.' *Yount v. Dep[']t of Corr[.], . . .* 966 A.2d 1115, 1120 ([Pa.] 2009); *see also Richardson v. Wetzel,* 74 A.3d 353, 357 (Pa. Cmwlth. 2013) (applying *Yount* test and finding no factual averments in the complaint demonstrating retaliatory conduct by prison officials).

*Mays v. Kosinski*, 86 A.3d 945, 948-49 (Pa. Cmwlth. 2014). "Adverse action is one which is sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Bush v. Veach*, 1 A.3d 981, 985 n.5 (Pa. Cmwlth. 2010).

Here, in support of his retaliation claim, Bullock generally averred in the Petition that the Department's "actions or inactions . . . in depriving [him] of his property were planned and calculated in retaliation for [his] grievance complaint and civil actions," without specific facts to substantiate his claim. Petition ¶ 6. With the exception of the December 2014 RHU release incident, the Petition does not specifically state who retaliated against him or the precise reason, and/or whether the Department was aware of the incidents, nor does it reflect how Bullock was deterred from exercising his constitutional rights. And, even in that one instance, the Petition does not make specific allegations of wrongdoing related to any one of Bullock's past

filings and, since Bullock purportedly grieved the matter, he clearly was not deterred from exercising his constitutional rights.

Accepting as true all of the Petition's well-pled allegations and inferences reasonably deduced therefrom, it "appear[s] with certainty that the law will not permit recovery" for Bullock's alleged retaliation claims. *Torres*, 997 A.2d at 1245. Accordingly, we sustain the Department's demurrer to Bullock's retaliation claims.

## Conclusion

Because Bullock has not articulated any factual or legal basis to support his claims, the Department's preliminary objections are sustained, and Bullock's Petition is dismissed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamont C. Bullock,                          :
                              Petitioner    :
                                            :
            v.                              :
                                            :
The Pennsylvania Department                 :
of Corrections,                             :     No. 241 M.D. 2016
                              Respondent    :

## O R D E R

AND NOW, this 12th day of May, 2017, the Pennsylvania Department of Corrections' preliminary objections to Lamont C. Bullock's (Bullock) Amended Petition for Review (Petition) are sustained and Bullock's Petition is dismissed.


_____
ANNE E. COVEY, Judge