# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel Pittman,                 :
            Petitioner         :
                                :
            v.                  :    No. 476 M.D. 2022
                                :    Submitted: November 6, 2023
Commonwealth of PA.,        :
PA DOC,                     :
            Respondents    :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE STACY WALLACE,** Judge
                  **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: January 2, 2024**

Before this Court in our original jurisdiction are the preliminary objections (POs) in the nature of demurrers[1] filed by the Commonwealth of Pennsylvania, Department of Corrections (DOC) to Gabriel Pittman's (Petitioner) pro se "Original Jurisdiction Petition for Review In the Nature of a Writ of Mandamus" (Petition). In his Petition, Petitioner, an inmate currently incarcerated at the State Correctional Institution (SCI) at Huntingdon, asserts numerous violations of his rights under the United States Constitution occurred when he was transferred to another prison and was not released from incarceration under former Governor Tom Wolf's (Wolf)

---

[1] Pennsylvania Rule of Civil Procedure 1028(a)(4) states that preliminary objections may be filed by any party for legal insufficiency of a pleading (demurrer). Pa.R.Civ.P. 1028(a)(4). A preliminary objection in the nature of a demurrer tests "the legal sufficiency" of the petition and will be sustained in cases where the pleader has "clearly failed to state a claim for which relief can be granted." *Clark v. Beard*, 918 A.2d 155, 158-59 n.4 (Pa. Cmwlth. 2007). "The demurrer may be granted only in cases which are so free from doubt that a trial would certainly be a fruitless exercise." *Id.*

Reprieve of Sentence of Incarceration Program (Reprieve Program) initiated due to the novel coronavirus pandemic (COVID-19) and requests mandamus, declaratory, and injunctive relief.[2]  Petitioner also requests mandamus, declaratory, and injunctive relief for similar reasons in "Petitioner's Motion for Forthwith Peremptory Judgment" (Motion) filed in this Court on January 23, 2023.  Because Petitioner has failed to demonstrate a clear right to relief that necessitates the issuance of a writ of mandamus, and we conclude that he has otherwise failed to state a claim upon which declaratory or injunctive relief can be granted, we sustain DOC's POs in the nature of demurrers, dismiss Petitioner's Petition, and dismiss Petitioner's Motion as moot.

## I.  BACKGROUND

Petitioner has been incarcerated since August 1998 and states in his Petition that his challenges herein do not pertain to his convictions or sentence.[3]  (Petition ¶¶ 2-3.)  Petitioner argues his detention is akin to "modern slavery" in that DOC had

---

[2] On March 6, 2020, Wolf utilized the powers granted to him under Section 7301(c) of the Emergency Management Services Code (EMS Code), 35 Pa.C.S. § 7301(c), and proclaimed that a disaster emergency existed in the Commonwealth due to the COVID-19 pandemic.  Pursuant to the authority of Section 7301(a), (f)(5), and (f)(7) of the EMS Code, 35 Pa.C.S. § 7301(a), (f)(5), (f)(7), and article IV, section 9(a) of the Pennsylvania Constitution, Pa. Const., art. IV, § 9(a), on April 10, 2020, Wolf issued an order directing the DOC to establish the Reprieve Program. *Fultze v. Pa. Parole Bd.* (Pa. Cmwlth., No. 77 C.D. 2021, filed Dec. 15, 2021), slip op. at 2 & n.2.  While not binding, this Court's unreported opinions may be cited for their persuasive authority pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of our Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[3] We note that Petitioner also states in his Motion that his "conviction" is not at issue in this matter.  (Motion ¶ 11.)  However, he seems to contradict this position in his Petition where he says he is challenging his "facial and as-applied alleged unconstitutional detention," (Petition ¶ 4), in his Motion where he alleges he was convicted following "unknowing guilty and nolo[]contendere pleas," (Motion ¶ 7), and in his brief where he argues he "is a prisoner unconstitutionally confined," (Petitioner's Brief (Br.) at 2).

2

"taken possession" of his "body" in 1998 and over the years required him to spend time in the restrictive housing unit (RHU) and transferred him numerous times to various prisons after labeling him "a risk or threat to staff" and as "suffering from serious mental illness." (*Id.* ¶¶ 4-6, 8, 23.) Petitioner claims that DOC is dependent upon federal funding and, to obtain that funding, has held him and "black and brown prisoners" in aged facilities with overcrowded and unclean conditions, including "black mold, dust, dirt, [and] grime from the age of time," without utilizing any federal monies to improve the prisons. (*Id.* ¶¶ 6, 8-10, 12, 17.) Petitioner asserts that he was at a lesser risk of contracting COVID-19 at SCI-Houtzdale, where he was housed at the outset of the pandemic, which was especially important to him due to his having an underlying health condition. (*Id.* ¶¶ 10-11.) Notwithstanding, rather than releasing him to serve the remainder of his 26-year prison sentence on house arrest in light of the Reprieve Program, administrators at SCI-Houtzdale brought in prisoners from other prisons, creating overcrowding, and transferred Petitioner to SCI-Huntingdon, which he claims is one of the "oldest, dirtiest, COVID-susceptible, black mold-infested prisons in the state." (*Id.* ¶¶ 12-13, 16-17.) As a result of his transfer, Petitioner states he has become ill and has difficulty breathing. (*Id.* ¶ 13.) Petitioner alleges that the state parole procedures are effectively controlled and regulated by federal spending and have allowed deplorable conditions in state prisons to continue despite the presence of COVID-19. (*Id.* ¶¶ 19-21.) According to Petitioner, DOC's acceptance of federal funding while keeping him incarcerated violates his rights under the Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the Constitution, U.S. Const. amends, IV, V, VIII, IX, X, and XIV. (*Id.* ¶¶ 23, 28.) Petitioner further claims these same rights also were violated as a result of DOC transferring him to SCI-Huntingdon and

3

DOC automatically excluding him from the Reprieve Program as a "violent offender." (*Id*. ¶¶ 14-15, 24-26.)

Petitioner asks this Court to declare that his imprisonment constitutes "cruel and unusual punishment" in that he has been excluded from eligibility for a "stay of execution of sentence" available due to COVID-19 and violates his "due process" and "equal protection" rights under the Fourth, Fifth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution, U.S. Const. amends, IV, V, VIII, IX, X, XIII, and XIV. (*Id*. ¶¶ 23, 25.) Petitioner also posits that DOC's receipt of federal funding through such programs as the Violent Offender Incarceration and Truth in Sentencing (VOITIS) incentive grant program[4] violates his personal, and the entire state of Pennsylvania's, Tenth Amendment rights. (*Id*. ¶¶ 14, 19, 28-29.) Petitioner further requests this Court to declare that his "malicious[]" transfer from SCI-Houtzdale to SCI-Huntingdon allegedly to reduce the prison population at SCI-Houtzdale instead was motivated by "pecuniary interest" and constituted "an unreasonable seizure and taking title to [his] body." (*Id*. ¶¶ 24-25, 30.) Petitioner also seeks injunctive relief to prevent prisons from accepting federal funding, to order DOC to return misappropriated funds to the federal government, and to permit Petitioner's release from prison due to COVID-19. Additionally, Petitioner requests a bus ticket to Washington D.C., a $3,500.00 payment, a stay of execution of imprisonment, a permanent transfer to be housed in a single cell in the general population at SCI-Phoenix, and multiple electronic

---

[4] 34 U.S.C. §§ 12101-12113.

amenities and internet services for his use and that of other prisoners while incarcerated. (*Id*. ¶ 31.)[5]

In its POs, DOC first argues that the Petition sounds in mandamus, as Petitioner seeks declaratory and injunctive relief when asking this Court to prohibit DOC from receiving federal funding and to compel DOC to release him from prison under COVID-19 "based stay of execution," and transfer him to SCI-Phoenix. (POs ¶¶ 11-12, 15.) According to DOC, Petitioner has failed to establish a clear right to relief because an inmate does not enjoy a constitutional right to be housed in a particular prison and transfer decisions are within the broad discretion of DOC. Also, DOC asserts Petitioner failed to plead facts showing that his transfer was punitive or without a legitimate penological reason. (*Id*. ¶¶ 19-24.) DOC also points out that Petitioner, who is serving a sentence for third degree murder,[6] did not have an automatic right to participate in the Reprieve Program, which was limited to qualifying inmates. (*Id*. ¶¶ 29-30, 33.) Finally, DOC posits that none of Petitioner's constitutional claims entitle him to relief. (*Id*. ¶¶ 32-68.) DOC observes that

---

[5] In his Motion, Petitioner argues that under the Tenth Amendment and established United States Supreme Court caselaw, the federal courts do not have jurisdiction to convict and punish individuals for crimes committed within the states. (Motion ¶¶ 2-6, 10.) According to Petitioner, VOITIS and other "sentencing policies" enacted in 1995 "compelled" and "regulated" his receiving the maximum sentence for his crimes, influence parole decisions, and are "incompatible with our constitutional system of dual sovereignty" in violation of the Tenth Amendment. (*Id*. ¶¶ 7-10.) Petitioner repeats his prayer for: mandamus relief ordering his discharge from prison; declaratory relief that his continued imprisonment violates his "clearly established" rights under the "Fourth, Fifth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments"; injunctive relief enjoining DOC from holding him in custody and from continuing to accept federal funds; and injunctive relief "for travelling and clothing expense purposes only" and "$3,500.00 in [the form of] cash" or a "pre-paid debit card." (*Id*., Wherefore Clause a-e.)

[6] Petitioner pled guilty to third degree murder and related charges on July 6, 1998, stemming from the shooting death of an acquaintance and was sentenced to an aggregate term of 26 years to 59 years in prison. *Commonwealth v. Pittman*, 737 A.2d 272, 273 (Pa. Super. 1999). Petitioner also references a conviction from 2016, but he does not identify the nature of that conviction. (Petition ¶ 25).

Petitioner has failed to allege facts to show how the Fourth Amendment's prohibition of unreasonable searches and seizures applies to him and that his argument that his "body" has been taken for public use without just compensation is not a viable claim under the Fifth Amendment. (*Id.* ¶¶ 36-41.) DOC also states that Petitioner's averments that he was at a lower risk of contracting COVID-19 when he was incarcerated at SCI-Houtzdale and of the unclean conditions at SCI-Huntingdon do not satisfy the elements necessary to show a violation of the Eighth Amendment, and the Ninth Amendment does not confer an independent basis for recovering on this claim. (*Id.* ¶¶ 42-53.) DOC further contends its acceptance of federal funds through programs like the VOITIS incentive program by ensuring violent offenders serve a "substantial portion" of their sentence or by demonstrating that "it has implemented truth-in-sentencing laws that require persons convicted of a violent crime to serve not less than 85 % of the sentence imposed" does not constitute a Tenth Amendment violation because the federal government cannot control state action by forcing states to accept conditions for funding; it can induce state action by promising federal funding if those conditions are met. (*Id.* ¶¶ 54-60.) Finally, DOC argues that Petitioner's claims of forced labor and the taking of his person in violation of the Thirteenth Amendment lack merit, and his transfer does not constitute a violation of the Fourteenth Amendment. (*Id.* ¶¶ 61-68.)

## II.   DISCUSSION

"[T]he question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible." *Stilp v. General Assembly*, 974 A.2d 491, 494 (Pa. 2009). When ruling on preliminary objections in the nature of a demurrer, this Court must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn therefrom.

6

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). We "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* Before we will sustain preliminary objections, "it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Id.* Also, when considering a preliminary objection in the nature of a demurrer, we "must confine [our] analysis to the [petition]." *Id.* Thus, herein, we may determine only, based upon the allegations in his Petition, whether Petitioner "possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021).

Petitioner's Petition essentially requests mandamus relief, along with declaratory and injunctive relief along with certain damages. In this regard, this Court has stated the following:

> A writ of mandamus is an extraordinary remedy used to compel official performance of a ministerial act when a petitioner establishes a clear legal right, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law. *Danysh v. Wetzel,* 49 A.3d 1, 2 (Pa. Cmwlth. 2012). The purpose of mandamus is to enforce rights that have been clearly established. *Silo v. Commonwealth,* 886 A.2d 1193, 1195 (Pa. Cmwlth. 2005). Mandamus may not be used to establish legal rights or to compel performance of discretionary acts. *Maute v. Frank,* 670 A.2d 737, 740 (Pa. Cmwlth. 1996). Although [the p]etitioners have titled their action as one in mandamus, they also request permanent injunctive relief. [] Like mandamus, [the p]etitioners' threshold burden when seeking a permanent injunction is to establish a clear legal right to relief. *Rosario v. Beard,* 920 A.2d 931, 934 (Pa. Cmwlth. 2007). To secure injunctive relief, [the p]etitioners must demonstrate that the right to relief is clear, that there is an urgent necessity to avoid an injury which cannot be compensated in damages, and that the greater injury will result from refusing rather than granting the relief requested. *Id.; Singleton v. Lavan,* 834 A.2d 672, 674 (Pa. Cmwlth. 2003). Petitioners also request incidental damages pursuant to Section 8303 of the Judicial Code.[5] 42 Pa.C.S. § 8303.

Section 8303 of the Judicial Code provides: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal."

*Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014).

A.    *Petitioner's Right to Choose his Place of Incarceration.*

Petitioner challenges DOC's authority to transfer him from SCI-Houtzdale to SCI-Huntingdon and requests that this Court order his transfer to SCI-Phoenix with his requested amenities. With regard to the transfer challenge, the Pennsylvania Supreme Court has held that "administrative prisoner transfers are presumed to further a legitimate penological objective unless a prisoner plaintiff proves otherwise." *Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1121 (Pa. 2009). To prove otherwise, "a prisoner plaintiff must demonstrate by a preponderance of the evidence he was retaliated against for exercising his constitutional rights and the retaliatory action does not advance legitimate penological goals." *Id*. Other than his general allegations regarding SCI-Huntingdon's relative uncleanliness and age, Petitioner has not pled any facts to evince that his transfer at the outset of COVID-19 was done without legitimate penological reasons or in an effort to punish him.

Furthermore, despite his desire to have this Court order DOC to transfer him to SCI-Phoenix, we simply cannot do so, for Petitioner does not have a clear legal right to a transfer. To the contrary, Petitioner has no federal constitutional right to be housed in a particular prison or to avoid transfer to another prison within the Commonwealth, absent a violation of state law, and Petitioner has not alleged such a violation in his Petition. *Montanye v. Haymes,* 427 U.S. 236, 242-43 (1976). For

example, in a case involving prisoner transfers from a medium-security prison to a maximum-security prison, the United States Supreme Court held that a prisoner's right to due process under the Fourteenth Amendment does not protect every change in the conditions of his confinement that are "substantially less favorable" to him "absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other specified events." *Meachum v. Fano*, 427 U.S. 215, 215 (1976). Because the Due Process Clause of the Fourteenth Amendment is not so broad, it does not create a liberty interest in prisoners to be free from intrastate prison transfers which are within the normal limits of custody and the conviction authorizes the state to impose. *Id.* at 226-28. Here, Petitioner has not alleged that he was subjected to any discipline or punishment upon his arrival at SCI-Huntingdon, and his preference for SCI-Houtzdale and request for a transfer to SCI-Phoenix are not rights for which he is entitled to the issuance of a mandamus or injunctive relief. For this reason, we sustain DOC's demurrer to this claim.

   B.     *Petitioner's Entitlement to Relief under Wolf's Reprieve Program.*

Initially, it is well settled that an inmate "has no constitutional right to [] participate in a pre-release program." *Auberzinski v. Bd. of Prob. & Parole*, 690 A.2d 776, 779 (Pa. Cmwlth. 1997). This Court has explained the purpose of the Reprieve Program as follows:

> The purpose of this program was to curb the spread of [COVID-19] within the state correctional system by releasing certain inmates from incarceration, including inmates within 9 months of their minimum eligibility release date or any inmate with a medical condition that rendered them particularly vulnerable to the coronavirus who was within 12 months of such date. [] This order further provided that [Wolf] would "temporarily suspend the sentences of incarceration of those persons who qualify and comply with supervision requirements

9

for such length of time as may be necessary to respond to the Disaster Emergency proclaimed on March 6, 2020, or at such time as the Disaster Emergency is terminated."

*Fultze v. Pa. Parole Bd.* (Pa. Cmwlth., No. 77 C.D. 2021, filed Dec. 15, 2021), slip op. at 2. Moreover, citing to the lower court, the Superior Court further explained:

> Wolf issued an executive order to release 1,800 inmates in April of 2020, and pardoned 300 or so non-violent marijuana[-]related offenses in March of 2021.[] However, the release of the prisoners in the first group were chosen by the [DOC] based on select criteria, including incarceration time remaining and level of risk pertaining to COVID-19 complications. The second group involved non-violent marijuana related offenses. . . .

*Commonwealth v. Book* (Pa. Super., No. 976 WDA 2021, filed May 13, 2022), slip op. at 12 (footnote and citation omitted).[7]

In light of the foregoing, Petitioner has failed to show he had a right to be released from incarceration under the Reprieve Program. Petitioner pled guilty to third degree murder and related offenses in 1998 and received an aggregate sentence of 26 to 59 years' imprisonment; thus, he was not within 9-12 months of his minimum eligibility release date, he was not serving his sentence for a non-violent or marijuana related offense, and he has failed to support the single allegation in his Petition that having an underlying medical condition would put him at a greater risk for severe illness from COVID-19. Therefore, he has failed to state a claim for mandamus or injunctive relief on this claim, and we sustain DOC's demurrer to this claim.

---

[7] It is well settled that we may cite Superior Court cases for their persuasive value. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 653 n.20 (Pa. Cmwlth. 2021).

*C. Petitioner's Entitlement to Relief for Violations of His Federal Constitutional Rights.*

### 1. *Fourth Amendment Claim*

The Fourth Amendment to the United States Constitution provides

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Petitioner alleges that DOC took possession of his "body" in 1998, (Petition ¶ 5), and baldly asserts in his prayer for relief that his imprisonment violates his rights under the Fourth Amendment, (*id*. ¶ 23). However, his reliance on this bare assertion, without a corresponding allegation that he was in some way subjected to an unreasonable search or seizure, fails to show how Petitioner's imprisonment, which he also stated he was not challenging, (*id*. ¶ 3), is in violation of his Fourth Amendment rights. Therefore, as he has failed to state a claim for relief thereunder, DOC's demurrer is sustained.

### 2. *Fifth Amendment Claim*

Petitioner purports to invoke the Takings Clause which arises from the last clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. However, Petitioner does not allege in his Petition that his personal property was taken for a public use without just compensation. Rather, according to Petitioner, the "taking" of his "body" "for public use without just compensation" and

11

his imprisonment constitute a "modern slavery" over which he has no control and is at the mercy of prison officials who are motivated by incentives flowing from their receipt of federal funds. (Petition ¶¶ 5-6, 8-9, 23.) Petitioner supports these allegations by pointing out that he is "expected to work" and is "unable to escape due to threats of prosecution, violence, and death. . . ." (*Id.* ¶ 23.) However, "[s]eizure of convicted prisoners and their personal property are not the kinds of takings that are prohibited by the Fifth Amendment." *Thomas v. Stevens* (W.D. Mich., No. 1:22-CV-160, filed Aug. 16, 2022), 2022 WL 3367412 at *15.[8] Thus, the Takings Clause is not implicated herein. *Hines v. Ferguson* (E.D. Pa., No. 19-CV-3139, filed July 31, 2019), 2019 WL 3504239 at *1. Therefore, Petitioner has failed to state a claim under the Takings Clause, and we sustain DOC's demurrer to this claim.

### 3. *Eighth Amendment Claim*

The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Petitioner argues that his transfer from SCI-Houtzdale to SCI-Huntingdon placed him at an increased risk of contracting COVID-19 and "death" due to the unclean and overcrowded conditions at the latter facility and his preexisting medical condition. (Petition ¶¶ 9-12). Petitioner alleged the "old, dil[a]pidated, black-mold infested, inadequately ventilated, COVID-[19] highly suscep[ti]ble" conditions at SCI-Huntingdon along

---

[8] "Generally, federal court decisions are not binding on this Court. *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012)[]. However, we typically follow Supreme Court or 'Third Circuit precedent in preference to that of other jurisdictions' in resolving a federal issue. *Id.*" *Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 786 n.2 (Pa. Cmwlth. 2023).

with the "air alone" have caused him "coughing and sneezing fits" and "his lungs and throat to feel inflamed all day and night." (*Id.* ¶¶ 12-13, 23, 26.) Petitioner claims that as a result of these prison conditions, DOC has subjected him and "approximately 50,000 other state prisoners" to "cruel and unusual punishment." (*Id.* ¶¶ 23, 26.)

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the challenged conditions "must be[]objectively[] sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 825, 834 (1994) (citations and internal quotation marks omitted). Second, the officials responsible for the deprivation must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of 'deliberate indifference' to inmate health or safety." *Id.* at 834. In this regard, this Court has explained:

> "[D]eficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment. The amendment is violated only where an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 . . . (1981)). A violation requires proof that the "deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Courts should not use a static test in determining whether confinement conditions are cruel and unusual punishment, because the "Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346. . . . "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. . . . However, "the prison

environment itself may not be so brutal or unhealthy as to be in itself a punishment." *Tillery*, 907 F.2d at 426.

*Lopez v. Dep't of Corr.*, 119 A.3d 1081, 1090-91 (Pa. Cmwlth. 2015), *aff'd*, 144 A.3d 92 (Pa. 2016).

Mindful of the aforementioned legal standards, we must determine whether Petitioner has pled facts that, if proven, would satisfy the elements necessary to state a cognizable claim for DOC's violation of the ban on cruel and unusual punishment under the Eighth Amendment and, thus, establish the clear legal right necessary to state a claim for mandamus due to: the presence of mold; poor air quality and ventilation; overcrowding; prevalence of COVID-19; and overall antiquated condition of SCI-Huntingdon. Following our review of the Petition, which is replete with only general allegations, we find that Petitioner has failed to do so. Even if these bald allegations are deemed to be objectively true, Petitioner has not alleged facts to satisfy the subjective element necessary to state a claim for DOC's violation of the ban on cruel and unusual punishment which requires a showing that prison officials at SCI-Huntingdon acted with deliberate indifference to the conditions of confinement Petitioner believes threaten his health and safety. *Farmer*, 511 U.S. at 834; *Tindell*, 87 A.3d at 1040. Petitioner has not claimed that prison officials are even aware of his concerns about mold, air quality, COVID-19, and his alleged breathing difficulties let alone that they have intentionally prevented him from receiving medical attention or treatment for his ailments. While we can empathize with Petitioner's concerns about exposure to COVID-19, which are certainly heightened in a prison and in other congregate settings, concerns arising from COVID-19 are ones with which society at large is grappling. Petitioner's continued incarceration at SCI-Huntingdon, which may, indeed, have had more cases of

COVID-19, alone, is not sufficient to establish DOC has been deliberately indifferent to Petitioner's medical needs.  As this Court has previously observed:

> [The p]etitioners do not allege that they have been denied warmth, sleep, physical and mental health care, food, or clothing.  Instead, [the p]etitioners allege that the temperature and ventilation, medical care, sanitation, noise levels, food, amount of sleep, and clothing are inadequate in the RHU.  [The p]etitioners' allegations amount to a claim that the standard of decency required by society has evolved to necessitate better conditions than those in which they are currently confined.  Whether or not that is true, an Eighth Amendment claim based on the adequacy of the life necessities provided, rather than whether or not inmates are being deprived of those baseline necessities[,] cannot be stated in a mandamus action; a mandamus action can compel prison officials to clothe inmates within their care, but it cannot be used to determine the quality of clothing necessary under society's standards and to order that only clothing of that quality be used to clothe inmates.
>
> Whether or not the adequacy of the conditions of confinement violates our society's evolving standards of decency is a searching inquiry that requires a balancing of the government's power to punish and legitimate interest in the orderly operation of correctional institutions with [the p]etitioners' right to have their confinement be humane and free from the unnecessary and wanton infliction of pain.  Such an inquiry, by its very nature, requires a careful balancing of the needs and duties of the state with the rights of the individual, requires an investigation into what within this balance is a reasonable act, and requires, above all, an examination of what is and is not a permissible exercise of discretion on the part of [the r]espondents.  A mandamus action cannot be used to evaluate prison officials' exercise of discretion or to compel prison officials to exercise their discretion in a particular way.  In a mandamus action, the relief sought can only be the performance of a ministerial act; it cannot be equitable.  Equitable relief is exactly the type of relief an Eighth Amendment claim challenging the conditions of confinement or adequacy of the minimal necessities of life provided in a state correctional institution seeks.  In alleging that the conditions of confinement in the RHU . . . are cruel and unusual as proscribed by the Constitutions of the United States [], [the p]etitioners are not asking this Court to enforce clearly established rights, to which [the r]espondents have a corresponding duty, by ordering the

performance of a mandatory or ministerial act. [The p]etitioners are instead asking this Court to establish what their rights are and to fashion relief accordingly. Therefore, [the p]etitioners have not stated a claim for mandamus.

*Tindell*, 87 A.3d at 1042-43. For similar reasons, we conclude Petitioner here has not stated such a claim and sustain DOC's demurrer to his Eighth Amendment claim.

### 4. *Ninth Amendment Claim*

Pursuant to the Ninth Amendment of the United States Constitution, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. Petitioner vaguely asserts in his prayer for relief that his imprisonment violates his rights under the Ninth Amendment. This claim lacks merit, for the Ninth Amendment is not a source of substantive rights. *See, e.g., Perry v. Lackawanna Cnty. Children & Youth Servs.,* 345 Fed. App'x 723, 726 (3d Cir. 2009) (stating the "Ninth Amendment does not independently provide a source of individual constitutional rights"). Therefore, Petitioner has failed to state a claim under the Ninth Amendment, and DOC's demurrer to this claim is sustained.

### 5. *Tenth Amendment Claim*

The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Petitioner alleges he has suffered a violation of his Tenth Amendment right due to the

taking [of his body] for public use without just compensation of a substantial portion of the millions, billions, or trillions of

16

[mis]appropriated and [mis]allocated federal dollars directly and indirectly "granted" to [DOC] to imprison him for state crimes and execute his sentence in a manner that is forbidden by the Tenth Amendment's anticommandeering, dual-sovereignty, and federalism doctrines . . . .

(Petition ¶ 23 (some brackets in original, internal quotation marks omitted).) Petitioner focuses the bulk of his brief on the Tenth Amendment as well. In particular, Petitioner argues that the Commonwealth's acceptance of funds under the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA)[9] and the VOITIS incentive grant program, along with programs arising as a result of the COVID-19 pandemic, have resulted in his continued incarceration as they incentivize keeping prisoners detained and denying them parole and contribute to overcrowding, despite state measures to reduce the prison population during the COVID-19 pandemic. (Petitioner's Br. at 6-8, 10.) The VOITIS provides funding to states to enable them to construct or expand existing correctional facilities for violent offenders. Section 12103(a) of VOITIS provides:

> To be eligible to receive a minimum grant under this section, a State shall submit an application to the Attorney General that provides assurances that the State has implemented, or will implement, correctional policies and programs, including truth-in-sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

---

[9] Pub.L. No. 103-322, Title XVII, §§ 170101-303, also "[k]nown as the "Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act," . . . required "states, *inter alia*, to transmit sexual offender registration information to a national database. In 2006, the Jacob Wetterling Act was repealed and replaced by the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248." *Commonwealth v. Santana*, 266 A.3d 528, 530 n.5 (Pa. 2021).

17

34 U.S.C. § 12103(a).

Petitioner points to no evidence that any of the funding programs to which he cites impacted his continued incarceration despite the Reprieve Program or DOC's decision to transfer him to SCI-Huntingdon with respect to the constitutional protections guaranteed under the Tenth Amendment or any other of the constitutional protections to which he cites in his Petition. Petitioner pled guilty to and was sentenced for committing third degree murder and had not yet served his minimum sentence when he filed his Petition. Moreover, it has been determined that

> [a] state can receive funds if it provides assurances that it will implement policies and programs "to ensure that violent offenders serve a substantial portion of the sentences imposed" or the state "demonstrates that it has implemented truth-in-sentencing laws that require persons convicted of a violent crime to serve not less than 85 [%] of the sentence imposed." United States Department of Justice, *Department of Justice Resource Manual*, Office of Justice Programs Crime Act Offices Title 1 No. 15 (3d ed. 2018). While the Tenth Amendment "prevents the federal government from 'controlling' state legislatures through congressional command, it does not preclude Congress from inducing state action through the promise of federal funding." *Williams v. Bitner*, 285 F. Supp. 2d 593, 601 (M.D. Pa. 2003). The receipt of federal funds through the VOITIS grant program does not violate the Tenth Amendment because states can choose whether to accept the conditions connected to the acceptance of the funds. Further, the federal government has an interest in protecting the public and the funding is "reasonably calculated to address" the federal interest. *South Dakota v. Dole*, 483 U.S. 203, 209 (1987). For these and presumably other reasons, no court has ever held that VOITIS is unconstitutional.

*McCoy v. Smith* (E.D. Pa., No. CV 17-2162, filed July 5, 2018), 2018 WL 3304343 at *6. In light of the foregoing, we conclude Petitioner has failed to state a claim under the Tenth Amendment and therefore, sustain DOC's demurrer to that claim.

18

*6.* *Thirteenth Amendment*

Section 1 of the Thirteenth Amendment to the United States Constitution provides, in pertinent part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, §1. Petitioner reasons that DOC took possession of his "body" and as part of his imprisonment he is "expected to work" and is "unable to escape due to threats of prosecution, violence, and death" which put him in a position akin to slavery in violation of the Thirteenth Amendment. (Petition ¶ 23.) Contrary to his assertions, Petitioner is not being subjected to any form of servitude, for the United States Supreme Court has held that in light of its precedents "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment. By its terms the Amendment excludes involuntary servitude imposed as legal punishment for a crime." *United States v. Kozminski*, 487 U.S. 931, 943 (1988). Petitioner does not deny that he is serving an aggregate term of 26 years to 59 years in prison as a result of his pleading guilty to third degree murder and related offenses, and he stated in his Petition that he did not intend to challenge the legality of his sentence. (Petition ¶ 3). Moreover, notwithstanding the United States Supreme Court's pronouncement, Petitioner alleges only that he is "expected" to work, not that he will be subjected to legal sanction for a failure to do so. (*Id.* ¶ 23.) As a result, Petitioner has failed to state a claim of relief under the Thirteenth Amendment.

### 7.    *Fourteenth Amendment*

Section 1 of the Fourteenth Amendment to the United States Constitution reads, in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Petitioner appears to be invoking the Fourteenth Amendment Due Process Clause in support of his claim that DOC's acceptance of federal funds is an incentive for it to keep him imprisoned and the impetus behind his not being released from prison despite the Reprieve Program initiated in response to COVID-19. Similarly, Petitioner seems to reason that his transfer from SCI-Houtzdale to SCI-Huntingdon deprived him of his right to due process. When considering these claims, we are mindful that the Due Process Clause of the Fourteenth Amendment prohibits state and local government officials from depriving an individual of life, liberty, or property without due process of law. "Procedural due process rights are triggered by deprivation of a legally cognizable [property or] liberty interest." *Brown v. Blaine,* 833 A.2d 1166, 1171-72 (Pa. Cmwlth. 2003). A prisoner may show such a deprivation has occurred when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 1172 (citing *Sandin v. Conner,* 515 U.S. 472, 472 (1995)). Less serious restraints on a prisoner's freedom are deemed to fall "within the expected par[a]meters of the sentence imposed by a court of law." *Id.*

As previously stated, DOC's receipt of federal funding notwithstanding, Petitioner did not have a constitutional right to be considered for release under the

Reprieve Program or any other early release program, *Auberzinski*, 690 A.2d at 779, and Petitioner's guilty plea to third degree murder disqualified him from consideration for the Reprieve Program. To the extent Petitioner claims federal monies under programs such as VOITIS or VCCLEA has motivated DOC to keep him imprisoned, this argument is anticipatory, for "the actual sentence of a prisoner subject to total confinement is his maximum sentence, and **his minimum sentence merely sets the time after which he is eligible to serve the remainder of his sentence on parole**." *Hudson v. Pa. Bd. of Prob. & Parole*, 204 A.3d 392, 396 (Pa. 2019) (emphasis added). Petitioner was sentenced to an aggregate term of 26 years to 59 years' imprisonment in July 1998. *Commonwealth v. Pittman*, 737 A.2d 272, 273 (Pa. Super. 1999). Therefore, he will not have served his minimum sentence until July 2024. Finally, Petitioner's position that his transfer to SCI-Huntingdon violated his right to due process lacks merit, for the United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment "does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Montanye*, 427 U.S. at 242. Accordingly, Petitioner has failed to state a claim under the Fourteenth Amendment, and DOC's demurrer to this claim is sustained.

## III. CONCLUSION

Petitioner has failed to state a claim upon which mandamus, declaratory, or injunctive relief may be granted. Petitioner has neither a right to choose his place of incarceration nor to be considered for early release from prison under the Reprieve Program. Petitioner also has failed to show that his rights under the Fourth, Fifth, Eighth, Ninth Tenth, Thirteenth and Fourteenth Amendments to the Constitution have been violated. Accordingly, we sustain Respondents' preliminary objections

21

in the nature of demurrers and dismiss the Petition in this Court's original jurisdiction with prejudice. In light of this holding, Petitioner's Motion is dismissed as moot.

_____

**RENÉE COHN JUBELIRER,** President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel Pittman,                           :
               Petitioner            :
                              :
        v.                               :  No. 476 M.D. 2022
                              :
Commonwealth of PA.,                       :
PA DOC,                                    :
               Respondents          :

## O R D E R

**NOW**, January 2, 2024, the Preliminary Objections of the Commonwealth of Pennsylvania, Department of Corrections are **SUSTAINED**. Gabriel Pittman's pro se "Original Jurisdiction Petition for Review In the Nature of a Writ of Mandamus" is **DISMISSED WITH PREJUDICE**. "Petitioner's Motion for Forthwith Peremptory Judgment" is **DISMISSED AS MOOT**.

                                                   _____
                                            **RENÉE COHN JUBELIRER,** President Judge